## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SODIKJON TILLYAEV,                     :        No. 3:26cv1288
          Petitioner                :

                                     :        **(Judge Munley)**

    v.                                 :

WARDEN, Pike County Correctional       :
Facility,                              :
          Respondent                :

## ORDER

Before the court is a *pro se* petition for writ of habeas corpus filed by Petitioner Sodikjon Tillyaev under 28 U.S.C. § 2241. (Doc. 1).[1]  Tillyaev is detained by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at Pike County Correctional Facility ("Pike CCF"). due to alleged violations of federal immigration law.  Tillyaev argues that his detention is unlawful and violates his constitutional right to due process of law. He seeks immediate release.  After review and for the reasons set forth below, the petition will be granted.

Tillyaev is a native and citizen of Uzbekistan. (Doc. 1-1, Pet. Ex. A, Uzbekistan Passport).  He seeks asylum in the United States due to alleged religious and ethnic persecution.  (Doc. 1-4).  He also alleges that he is unable to practice his religion while detained by ICE at Pike CCF. (Doc. 1, Pet. at 3).

---

[1] The court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 2241(a).

According to the records provided by the parties, Tillyaev entered the United States on June 26, 2023, and thereafter encountered United States Border Patrol agents. (Doc.6-2, Resp. Ex. 1, I-213 at 3).  Agents arrested and processed the petitioner and then released him on his own recognizance due to a lack of bed space. Id.  DHS also issued Tillyaev a Notice to Appear charging him with violating 8 U.S.C. § 1182(a)(6)(A)(i). Id.  Subsequently, Tillyaev made his way to the Seattle metropolitan area, and obtained a driver's license from the State of Washington. (Doc. 1-2).  At some point, he moved across the country. Petitioner's asylum application, filed in June 2024, lists an address in Queens. (Doc. 1-4).  According to DHS records, Tillyaev had an immigration court date scheduled for November 17, 2026 in New York. (Doc. 6-5, Resp. Ex. 4, DHS Memo).

Petitioner's immigration court proceedings were then placed on a different track.  On January 28, 2026, City of Wilkes-Barre police officers encountered Tillyaev during a traffic stop. Id.  The municipal officers alerted ICE Enforcement and Removal Officers stationed in Pike County. Id. Thereafter, ICE took Tillyaev into custody from the Wilkes-Barre Police Department headquarters. Id.  He has been detained at Pike CCF for approximately five months.  Removal proceedings are ongoing, including hearing dates scheduled near in time to the date of this ruling.  As it currently stands, however, at the five-month mark of detention, there

2

is not even an order of removal in Tillyaev's case. He has not had a bond hearing or any individualized determination as to whether he is a danger to the community or a flight risk.

Tillyaev argues that such detention is unlawful. Petitioner further argues that his due process rights are being violated. He requests his immediate release from Pike CCF to cure this violation.

The United States Attorney's Office for the Middle District of Pennsylvania filed a response on behalf of the Warden of Pike CCF. (Doc. 6). The response limits the issue to a determination of whether 8 U.S.C. § 1225(b)(2)(A) applies to Tillyaev. Two appellate decisions align with the respondent's reading of Section 1225, Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) and Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). This manner of statutory construction authorizes indefinite confinement of individuals like the petitioner.

On the other hand, the Second Circuit Court of Appeals, the Sixth Circuit Court of Appeals, the Eleventh Circuit Court of Appeals, and at least 370 federal district court judges, including the undersigned, reject the government's reading of Section 1225.[2] See Lopez-Campos v. Raycraft, 175 F.4th 714, 734 (6th Cir.

---

[2] This total also includes all judges in the Middle District of Pennsylvania to consider the issue. See Quispe v. Rose, 819 F.Supp. 3d 362, 369–72 (M.D. Pa. 2025) (Mehalchick, J.); Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865 at *5 (December 8, 2025) (Mariani, J.); Nossov v. Hoover, No. 1:25-2562, 2026 WL 711691, at *3 (M.D. Pa. Mar. 13, 2026) (Mannion, J.); Diaz Aparicio v. Lowe, No. 3:25-CV-02413, 2026 WL 526702, at *8 (M.D. Pa. Feb. 25, 2026) (Saporito, J.); Romero v. Lowe, No. 4:26-CV-00009, 2026 WL 296215, at *5 (M.D. Pa. Feb. 4,

is not even an order of removal in Tillyaev's case. He has not had a bond hearing or any individualized determination as to whether he is a danger to the community or a flight risk.

Tillyaev argues that such detention is unlawful. Petitioner further argues that his due process rights are being violated. He requests his immediate release from Pike CCF to cure this violation.

The United States Attorney's Office for the Middle District of Pennsylvania filed a response on behalf of the Warden of Pike CCF. (Doc. 7). The response limits the issue to a determination of whether 8 U.S.C. § 1225(b)(2)(A) applies to Tillyaev. Two appellate decisions align with the respondent's reading of Section 1225, Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) and Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). This manner of statutory construction authorizes indefinite confinement of individuals like the petitioner.

On the other hand, the Second Circuit Court of Appeals, the Sixth Circuit Court of Appeals, the Eleventh Circuit Court of Appeals, and at least 370 federal district court judges, including the undersigned, reject the government's reading of Section 1225.[2] See Lopez-Campos v. Raycraft, 175 F.4th 714, 734 (6th Cir.

---

[2] This total also includes all judges in the Middle District of Pennsylvania to consider the issue. See Quispe v. Rose, 819 F.Supp. 3d 362, 369–72 (M.D. Pa. 2025) (Mehalchick, J.); Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865 at *5 (December 8, 2025) (Mariani, J.); Nossov v. Hoover, No. 1:25-2562, 2026 WL 711691, at *3 (M.D. Pa. Mar. 13, 2026) (Mannion, J.); Diaz Aparicio v. Lowe, No. 3:25-CV-02413, 2026 WL 526702, at *8 (M.D. Pa. Feb. 25, 2026) (Saporito, J.); Romero v. Lowe, No. 4:26-CV-00009, 2026 WL 296215, at *5 (M.D. Pa. Feb. 4,

3

2026); Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, 175 F.4th 1258, 1265–85 (11th Cir. 2026); Barbosa da Cunha v. Freden, 175 F.4th 61, 96 (2d Cir. 2026); see also Castanon-Nava v. U.S. Dep't of Homeland Sec., 175 F. 4th 828, 842–56 (7th Cir. 2026) (Lee, J.) (portion of lead opinion not joined by concurring judge).  The government acknowledges these past decisions, and its response may be read as advancing only narrow legal arguments to preserve them for future appeal.

With respect to this specific matter, the court sees no reason to deviate from Lopez-Campos, Hernandez Alvarez, Barbos da Cunha, or its prior decisions.[3]  In petitioner's case, he was released on his own recognizance into the United States in June 2023.  He lived in the United States for two-and-a-half years before being detained.  As a result, 8 U.S.C. § 1226(a) applies to his detention, not Section 1225(b)(2)(A).[4]  Under Section 1226(a), a noncitizen in

---

2026) (Brann, C.J.); Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *5 (M.D. Pa. Feb. 13, 2026) (Wilson, J.); Chaudhari v. Rose, No. 3:26-CV-242, 2026 WL 540378, at *6 (M.D. Pa. Feb. 26, 2026) (Neary, J.).

[3] The Third Circuit heard oral argument regarding this issue on May 11, 2026, based on the government's appeals in Morocho v. Jamison, No. 5:25-CV-05930-JMG, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025), app. filed sub nom. Morocho v. Warden Phila. FDC, No. 26-1150 (3d. Cir. Jan 22. 2026) and Andrade v. Rose, No. 26-603, 2026 WL 401189 (E.D. Pa. Feb. 12, 2026), app. filed sub nom., De Andrade v. Director Phila. Field Off. Immig., No. 26-1451 (3d Cir. Mar. 2, 2026).

[4] Tillyaev is an "applicant for admission" under Section 1225(a), but he is not "seeking admission" because he is not requesting lawful entry into the United States after inspection and authorization. Barbosa da Cunha, 175 F.4th at 96.  His application for asylum does not evidence that he is seeking admission but reflects efforts to obtain lawful status and avoid

4

removal proceedings *may* be detained pending a decision on removal. However, pending a removal decision, the noncitizen may also be released on bond or conditional parole following an individualized hearing before an immigration judge. 8 U.S.C. § 1226(a)(1)–(2); 8 C.F.R. §§ 236.1(d), 1236.1(d).

As the removal process moves forward, the government has determined that Tillyaev should not be afforded a bond hearing or any type of proceeding to determine whether he is a danger to the community or a flight risk. The court thus turns to Tillyaev's due process claim under the Fifth Amendment of the United States Constitution.

It is undisputed that Tillyaev entered the United States illegally and was apprehended at or near the United States-Mexico border. Nonetheless, people who enter this country without legal authorization are not immediately stripped of all their rights because of this single illegal act. See Lozano v. City of Hazleton, 496 F. Supp. 2d 477, 498 (M.D. Pa. 2007), aff'd in part, vacated in part, 620 F.3d 170 (3d Cir. 2010), cert. granted, judgment vacated sub nom. City of Hazleton,

---

removal. Hernandez Alvarez, 175 F.4th at 1268 ("an alien's status as 'admitted' conveys more than a right to lawfully remain in the United States -- indeed, there are many forms of 'lawful status' that grant an alien the right to remain, yet do not necessarily amount to 'admission,' such as asylum and temporary protected status"). Moreover, the government's reading of Section 1225 "defies the statute's context, structure, history, and purpose; contradicts the Supreme Court's dicta in Jennings [v. Rodriguez, 583 U.S. 281 (2018)] and longstanding Executive Branch practice; and its interpretation of the statute raises serious constitutional questions that should be avoided even if the statutory language were ambiguous." Barbosa da Cunha, 175 F.4th at 96.

Pa. v. Lozano, 563 U.S. 1030 (2011), and aff'd in part, rev'd in part, 724 F.3d 297 (3d Cir. 2013). That is, the Due Process Clause applies to everyone, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

To reiterate, "[n]o person," including the petitioner, "shall…be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (citation omitted); see also Zadvydas, 533 U.S. at 721 (Kennedy, J., dissenting) ("both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious.").

Based on the analysis above, Tillyaev has been detained for approximately five months under a statute that does not apply to him.[5] Without an ability to

---

[5] Under such facts, a consideration of the procedural due process factors in Mathews v. Eldridge, 424 U.S. 319 (1976) leads to a conclusion that Tillyaev's indefinite imprisonment at Pike CCF without bond is a violation of his constitutional rights. Those factors are: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and 3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Mathews, 424 U.S. at 335. First, petitioner's private interest is the interest in not being physically detained by the government, which "is the most elemental of liberty interests[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). "The restriction of liberty is particularly acute here where, absent a bond hearing, he would be detained for months or even years while his case proceeds." Cunin v. McShane, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (Neary, J.)

obtain release on bond and/or conditions, Tillyaev has experienced a clear procedural due process violation.

Habeas courts "have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." Boumediene v. Bush, 553 U.S. 723, 779 (2008). In this case, after careful consideration, Tillyaev will be released.

In response to the petition, the government has not provided any information indicating that the petitioner is a danger to the community or a flight risk. As for any danger to the community, there is no evidence that Tillyaev's traffic stop in the City of Wilkes-Barre resulted in any criminal charges, the recovery of any weapons, drugs, or other contraband, or even resulted in a citation for a Vehicle Code violation. Tillyaev has no criminal record and no record of any criminal arrests in the 30 months he resided in the United States

---

(citation omitted). Second, he has been detained without any apparent procedural safeguards, including the ability to obtain a bond hearing. See id. ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely."); see also Patel, 2025 WL 3516865, at *6 (citing Bethancourt Soto v. Soto, No. 25-CV-16200, 807 F.Supp.3d 397, 409 (D.N.J. 2025); Quispe, 819 F.Supp. 3d at 372–73. As to the third consideration, the government has an interest in detaining noncitizens to ensure their appearance at future immigration proceedings and to prevent danger to the community. The government believes that it may vindicate those interests through indefinite detention without any individualized determination that this petitioner poses a flight risk or danger to the community. But this goes too far for the reasons discussed in the body of this memorandum.

7

before being detained.  With respect to risk of flight, Tillyaev was scheduled for a hearing in November 2026 before his arrest placed him on a faster track in the removal process.  There is no removal order.  When Tillyaev does have a hearing before an IJ, he has asylum and withholding claims to be addressed. Based on the above, only immediate release will remedy the due process violation in this case.  The government may resume monitoring Tillyaev under the same conditions that existed prior to his detention.  It may not impose additional conditions on Tillyaev's release, including any form of body-worn electronic monitoring, unless those conditions were in place immediately before his detention.  Also, to be clear, nothing in this order precludes the government from detaining Tillyaev in the event of a material change in circumstances, including any re-detention under 8 U.S.C. § 1226(c) or § 1231(a).

Consequently, it is hereby **ORDERED** that:

1) Sodikjon Tillyaev's petition for writ of habeas corpus, (Doc. 1), is **GRANTED**;

2) Tillyaev's current detention is not governed by 8 U.S.C. § 1225(b)(2)(A) and ongoing detention without an opportunity for release on bond or conditions violates his right to due process of law;

3) The government shall **immediately** release Tillyaev from its custody;

8

4) On or before **July 1, 2026 at 12:00 noon**, the government shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Tillyaev has been released;

5) The government shall release Tillyaev under the same conditions that existed prior to his detention, including release: (1) in New York City where the petitioner resides; (2) without the imposition of any new conditions; (3) with all clothing and outerwear worn at the time of the detention or other appropriate attire; and (4) with all personal property, including, but not limited to, any driver's license, passport, immigration documents, currency, or cell phone that was seized at the time of detention and that is currently in their custody, possession, or control, whether maintained directly by respondents or by any contracted or affiliated facility;

6) The government is temporarily enjoined from re-arresting Tillyaev for a period of 7 days to ensure that this habeas remedy is effective; and

7) The Clerk of Court is directed to **CLOSE** this case.

9

Date: 6/26/26

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court